# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**DAMIEN CHRISTOPHER HAYES,**

      **Plaintiff,**

**VS.**                                 **Case No. 4:16cv28-MW/CAS**

**DR. FRANCIS ONG, et al.,**

      **Defendants.**
_____/

## SECOND REPORT AND RECOMMENDATION[1]

Three motions for summary judgment are pending in this case: (1) Defendant Dr. Francis Ong's motion was filed on January 9, 2017, ECF No. 63; Pro se Plaintiff Damien Hayes's motion was filed on January 11, 2017, ECF No. 64; and the third motion was filed by Defendants Joseph Winfree, Dr. Anna Bucarelli, Carolyn Lee, and Kohatha Campbell, ECF No. 66, on January 17, 2017, supported by separately filed exhibits, ECF No. 65. The parties were advised of the applicable rules concerning summary judgment motions, and advised that they could await filing responses in opposition

_____

[1] The first Report and Recommendation, ECF No. 48, was entered on October 12, 2016, and recommended that Dr. Ong's motion to dismiss, ECF No. 24, be denied. The Report and Recommendation was adopted. ECF No. 53.

until a subsequent order set a deadline to do so.  ECF No. 61.  Thereafter,

a memorandum in opposition to Plaintiff's motion for summary judgment

was filed by Dr. Ong.  ECF No. 67.  A follow-up Order set a deadline for

filing responses in opposition to the summary judgment motions, *see* ECF

No. 69, and Plaintiff was given permission to file a reply to Defendant

Ong's opposition, ECF Nos. 68-69,[2] and granted an extension of time in

which to do so.  ECF Nos. 71-72.

On May 1, 2017, Plaintiff filed a reply, ECF No. 73, to Defendant

Ong's response, ECF No. 67.  That reply also addresses the motion for

summary judgment filed by Defendants Winfree, Bucarelli, Lee, and

Campbell, ECF No. 66.  ECF No. 73 at 2-7.  Although the purpose of that

document is both a reply to Defendant Ong's response and a response to

the other Defendants' summary judgment motion, and notwithstanding that

such a response was submitted well after the response deadline of March

30, 2017, Plaintiff's arguments have been considered.

Finally, Defendant Ong filed an unauthorized sur-reply.  ECF No. 76.

It has also been considered.  All three motions are ready for a ruling.

---

[2] Plaintiff's motion specifically requested additional time only to filie a reply to
Defendant Ong's opposition to his motion for summary judgment.  ECF No. 68 at 2.

## I.    Relevant Allegations of the Complaint, ECF No. 1

On September 21, 2013, Damien Christopher Hayes fell and injured his right hand.  ECF No. 1 at 4.  Mr. Hayes went to medical and was examined by a nurse who gave him an ice pack and Ibuprofen for what was considered to be "a possible fracture."  *Id.*  A notation was made for "immediate clinician notification," which Mr. Hayes explains was a request for evaluation by a physician.  *Id.*  Mr. Hayes was not evaluated for four days but, when finally seen, x-rays were ordered by the examining physician.[3]  *Id.*  X-rays were eventually taken on September 26, 2013.  *Id.* at 4-5.  The result showed "a fractured fifth metacarpal in his right hand." *Id.* at 5.  "Nurse Heuler and Dr. Bucarelli submitted an urgent/emergency medical consultation to Dr. Ong for further treatment."  *Id.*  Mr. Hayes reports that no further medical treatment was provided and he was provided only Ibuprofen and ice for his "severe pain."  *Id.*

Mr. Hayes returned to the medical department on October 3, 2013, seeking additional pain medication.   ECF No. 1 at 5.  Because he had still

---

[3] As explained more fully on page five of this Report and Recommendation, Dr. Delacerna first examined Mr. Hayes.  Dr. Delacerna has not been served.

not seen Dr. Ong, the nurse said she would send another "urgent" request.

Dr. Ong did not respond to that request either. *Id.*

Mr. Hayes went to sick call on October 15, 2013, continuing to

complain of pain. *Id.* at 6. He filed grievances concerning the lack of

medical care for his injury. *Id.* No care from Dr. Ong was forthcoming. *Id.*

at 6-7. Mr. Hayes was informed that nothing further could be done until

requests were approved. *Id.* at 7.

By December 5, 2013, Dr. Delacerna ordered another x-ray of

Mr. Hayes' hand which revealed the same fracture still existed. *Id.* at 8.

Yet another "urgent/emergency consultation" request was sent to Dr. Ong

on December 12, 2013, but "ignored." *Id.* Mr. Hayes alleged that four

medical consults which were labeled "urgent/emergency" went without a

response from Dr. Ong. *Id.* at 8. Finally, after a fifth urgent request was

made to Dr. Ong, Mr. Hayes was evaluated by Dr. Ong. *Id.* at 9. The

evaluation occurred on February 19, 2014. *Id.* Dr. Ong determined that

the fracture had healed, but left Mr. Hayes with "post-traumatic

osteoarthritis" and "permanent injury." *Id.* Mr. Hayes claimed that

Dr. Ong's refusal to examine and treat him was "gross negligence" and

resulted in permanent injury which could have been prevented if treatment had not been delayed.  *Id.*

## II.    Dr. Delacerna

The persons named as Defendants in this case are Dr. Francis Ong, a plastic surgeon; Dr. Bucarelli, the chief health officer at Taylor C.I.; Carolyn Lee, a nurse supervisor at Taylor C.I.; Kohatha Campbell, a nurse supervisor at Taylor C.I.; and Joseph Winfree, identified in the complaint as "the RNC for utilization management outpatient nurse at Corizon Health." ECF No. 1 at 2.  Mr. Hayes also named Dr. Delacerna as a Defendant, but service could not be carried out on Dr. Delacerna.  *See* ECF Nos. 19, 20, and 23.  Because Mr. Hayes has not responded with any further information to locate Dr. Delacerna and service of process has never been carried out, the complaint should be dismissed as to Dr. Delacerna pursuant to Federal Rule of Civil Procedure 12(b)(5).

## III.    Legal standards governing a motion for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp.</u>, 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[4] the court "that there is an absence of evidence to support the nonmoving party's case." <i>Id.</i> at 325, 106 S. Ct. at 2554.

An issue of fact is "material" if it could affect the outcome of the case. <u>Hickson Corp. v. Northern Crossarm Co., Inc.</u>, 357 F.3d 1256, 1259 (11th

---

[4] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), <i>cert. denied</i> 522 U.S. 1126 (1998) (quoting <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). <u>Owen</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

Cir. 2004) (citations omitted).  A party must show more than the existence

of a "metaphysical doubt" regarding the material facts, Matsushita Elec.

Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct.

1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is

insufficient.  The court must decide "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  Hickson Corp.,

357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252,

106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).  All reasonable inferences

must be resolved in the light most favorable to the nonmoving party,

Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), "only if

there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S.

372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v.

DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490

(2009)).  "Where the record taken as a whole could not lead a rational trier

of fact to find for the nonmoving party, there is no genuine issue for trial."

Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation marks

omitted) (quoted in Ricci, 557 U.S. at 586, 129 S. Ct. at 2677).

"Cross motions for summary judgment do not change the standard."

Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic &

Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007) (quoted in Ernie Haire

Ford, Inc. v. Universal Underwriters Ins. Co., 541 F. Supp. 2d 1295, 1297

(M.D. Fla. 2008). "'Cross motions for summary judgment are to be treated

separately; the denial of one does not require the grant of another.'"

Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d

1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608

F.2d 431, 433 (10th Cir. 1979)) (quoted in Ernie Haire Ford, Inc., 541 F.

Supp. 2d at 1297-98)).  Because Plaintiff (as the party with the burden of

proof) has a heavier burden on summary judgment, the Court will consider

the Defendants' motions first.  If Defendants' motions are denied, the Court

will consider whether Plaintiff is entitled to judgment as a matter of law.

## IV.   Rule 56 Evidence

On September 21, 2013, Mr. Hayes fell going up the stairs in his

dormitory and injured his right hand.  ECF No. 64, Ex. A (ECF No. 64 at

16).  He was seen that same day[5] by medical staff for complaints of pain,

---

[5] The records indicate Mr. Hayes' injury occurred around 7:00 in the morning and he was seen by medical staff at 2:45 that afternoon.  ECF No. 64 at 16.

Case No. 4:16cv28-MW/CAS

bruising ("purple in color"), and a severely swollen fifth digit on his right hand. *Id.* Mr. Hayes rated his pain a "7 on pain scale" of 1-10. *Id.* at 16-17. The "fracture/dislocation/sprain protocol" form indicates there was no deformity present and no tingling or numbness, but it was "bruised" and the box for "severe" was checked concerning the swelling. ECF No. 65-1 (Deft. Ex. 1);[6] ECF No. 64 at 17, Ex. A. The protocol form also indicates "possible fracture and/or dislocation." ECF No. 64 at 17, Ex. A. It appears that Mr. Hayes was instructed to ice his hand three times daily and he was given Ibuprofen for pain. ECF No. 65-1 (Deft. Ex. 1); ECF No. 64 at 17, Ex. A.[7] Additionally, the checkmark for "possible fracture" comes within a section of the protocol form which indicates Mr. Hayes required "immediate clinician notification." *Id.*

Mr. Hayes was not evaluated again until September 25, 2013, when he was examined by Nurse Singletary and Dr. Delacerna. ECF No. 65-2 (Deft. Ex. 2). Dr. Delacerna examined him, applied an ace bandage,

---

[6] The exhibits submitted by Defendants Bucarelli, Campbell, Lee, and Winfree are identified as "Deft. Ex." followed by the exhibit number.

[7] Both parties submitted the form, but the left side is cut off on both submissions. Nevertheless, the parties do not dispute what occurred at that visit to medical. *Cf.* ECF No. 64 at 2, ECF No. 66 at 2.

issued a low bunk pass and restricted activities pass, and ordered an x-ray.

*Id.* The x-ray was taken the following day, September 26, 2013, and

revealed a "[c]omminuted complex fracture of the mid to proximal right fifth

metacarpal." ECF No. 65-4 (Defendant. Ex. 4). Nurse Practitioner Heuler

and Dr. Bucarelli noted the findings in the Chronological Record of Health

Care on September 26, 2013. ECF No. 65-2 (Defendant. Ex. 2). The

Record also includes a notation for "urgent referral to RMC done." *Id.* A

splint was applied to Mr. Hayes' fourth and fifth digits and he was to be

given Ibuprofen 600 mg for a six month period. *Id.* The medical records

indicate Nurse Practitioner Heuler and Dr. Bucarelli submitted a

"consultation request/consultant's report" on that same day, September 26,

2013. ECF No. 65-5 (Deft. Ex. 5). The report noted Mr. Hayes' condition

was "acute trauma," and the type of consultation was "urgent" and an

"emergency." *Id.*

It appears that a second "staff request/referral" was submitted by

Nurse Practitioner Heuler on October 3, 2013. ECF No. 64 at 23. Again,

the request was noted to be "urgent/emergent" and was seeking "plastic

surgery" at the Regional Medical Center ("RMC"). *Id.*

On October 15, 2013, Mr. Hayes returned to sick call and was seen by Nurse Singletary.  ECF No. 64 at 25.  He said that he needed another "ace wrap" and "something for pain" because it was "throbbing" at night.  *Id.*  He also questioned why he had not yet been seen for his broken hand.  *Id.*  The nurse noted that the "ace wrap" and splint was still intact, the radial pulse was "strong," circulation and color was good, but the finger was "warm to touch" and remained swollen.  ECF No. 64 at 25.  Mr. Hayes was provided a "new ace wrap," given more Ibuprofen, and the chart was referred to the doctor to write a prescription "for analgesic" and renew the low bunk pass and restricted activity pass.  *Id.*

Mr. Hayes then filed an informal grievance on October 20, 2013.  ECF No. 64 at 27 (Ex. F).  He noted that the x-ray had confirmed he had a fracture and had been referred to "see a hand specialist."  *Id.*  He complained that the had gone to sick call but received "no answers as to anything being actually done in [his] case."  *Id.*  He complained that the pain in his hand was continuing and he cannot use it.  *Id.*  The response provided by Nurse Lee on October 25, 2013, advised that Mr. Hayes' chart reflected that an "urgent referral from provider" was sent to RMC the same day the x-ray was performed, September 26, 2013.  *Id.*  Nurse Lee

indicated that staff at Taylor C.I. had completed the "necessary paperwork" for the referral, and denied his grievance. *Id.* A notation also appears in the Chronological Record of Health Care which shows that the informal grievance (log # 1310-2488) was denied on October 25, 2013. ECF No. 64 at 25 (Ex. E).

On November 5, 2013, the Chronological Record reflects that a "second request for consult appt." was sent to RMC. *Id.;* ECF No. 65-6 (Deft. Ex. 6). Administrative assistant, Kohatha Campbell, sent an email to Utilization Management Nurse Joe Winfree on that same day requesting him to "please check the status" of the consultation request for Mr. Hayes. ECF No. 65-7 at 1 (Deft. Ex. 7). The email stated that it was "an Urgent/Emergency Consult" and the doctor was inquiring about the issue. *Id.* The email also shows the level of importance was "high." *Id.* Dr. Ong submitted another copy of that November 5th email which includes a hand-written notation saying: "Has been re-submitted; no approval as of 11/06/13." ECF No. 63-3 at 1 (Ex. C).

On November 20, 2013, Mr. Hayes returned to sick call to get another "ace wrap," stating that his "other one got taken." ECF No. 64 at 25. He also requested more Ibuprofen. *Id.* Nurse Singletary advised him

he already had a continuous 6 month prescription for Ibuprofen that could be filled as needed, and he said he did not know he could refill it.  *Id.*  The nurse renewed the low bunk pass and restricted activities pass and reminded him to apply ice as needed.  *Id.*  The record also includes a notation that a "pending consult" was "in progress."  *Id.;* ECF No. 65-6 (Deft. Ex. 6).

A notation in the Chronological Record for November 25, 2013, states: "Please see email instructions re: consult."  ECF No. 65-7 at 22 (Deft. Ex. 7).  However, the evidence reveals an email was sent from Ms. Campbell to Mr. Winfree on December 10, 2013, requesting to "know the status" of Mr. Hayes' consult request.  ECF No. 65-7 at 3.  The response from Mr. Winfree is dated December 12, 2013, and states:

> According to the UM [utilization management] database an email was sent for an ATP [alternate treatment plan] for this inmate as follows: ATP: Maintain splinting.  Re-Xray in a few weeks to check healing.  Add Ca++/Vit D supplement, then early PT and ROM as tol.[8]

---

[8] Defendants' motion for summary judgment, ECF No. 66 at 4, explains the medical abbreviations to mean that "[c]alcium and Vitamin D were added to [Mr. Hayes'] diet to promote healing."  ECF No. 66 at 4.  Mr. Hayes was also "to undergo physical therapy with range of motion exercises as tolerated."  *Id.*

ECF No. 65-7 at 3 (Deft. Ex. 7).[9]  The email indicates the "above ATP sent

to site" and closes by stating, "If you have not informed the MD; please do."

*Id.*  That email response also indicates the ATP was sent on November 23,

2013.  *Id.*

Mr. Hayes had a second x-ray on December 5, 2013.  ECF No. 65-8

(Deft. Ex. 8).  The results were: "Comminuted fracture proximal aspect of

the right fifth metacarpal.  A portion of the fracture extends into the

carpometacarpal articulation.  There is associated soft tissue swelling."  *Id.*

Additional evidence shows that the second x-ray request was made on

November 25, 2013, by Dr. Delacerna, *see* ECF No. 64 at 29, suggesting

that the November 23, 2013, email concerning the ATP had been received.

ECF No. 64 at 29 (Ex. G).

A notation in the Chronological Record for December 6, 2013, shows

the second x-ray results were received and "showed a visible" fracture.

ECF No. 65-9 at 1 (Deft. Ex. 9).  The notation is not entirely legible but it

---

[9] There is no evidence in this record of an email having been sent on November 23, 2013, concerning an alternate treatment plan [ATP].  Curiously, that email was not submitted as evidence; however, the November 25, 2013, notation in the Chronological Record would suggest that an email was sent concerning the consult.  ECF No. 65-7 at 22 (Deft. Ex. 7).

sufficiently reveals that there was communication between Ms. Campbell[10]

and Mr. Winfree about the consult request.  *Id.*  A followup notation on

December 10, 2013, is a direction from Dr. Delacerna to have Mr. Hayes

come see him soon.  ECF No. 65-9 at 1 (Deft. Ex. 9).

Mr. Hayes had a follow-up appointment with Dr. Delacerna on

December 12, 2013, concerning the December 5th second x-ray.  ECF No.

65-9 at 2 (Deft. Ex. 9).  The record notes that Mr. Hayes' fracture was still

present and states that the consult request would be resubmitted.  *Id.*  The

records also indicate that on the same day as the follow-up appointment,

Dr. Delacerna submitted another consultation request for Mr. Hayes to be

seen by "plastic surgery."  ECF No. 63-2 at 3 (Deft. Ex. B).  The request

was marked "urgent" and explained that Mr. Hayes suffered the fracture on

September 21, 2013.  *Id.*

On December 23, 2013, Mr. Hayes was involved in an "altercation"

with another inmate.  ECF No. 65-10 (Deft. Ex. 10).  He complained of

discomfort in his right hand.  *Id.*  A notation in the record for "pre-special

_____

[10] Ms. Campbell emailed Mr. Winfree again on December 10, 2013, at 8:19 a.m.
stating: "Mr. Winfree will you please let me know the status on this inmates' consult."
ECF No. 65-7 at 2 (Deft. Ex. 7).  Mr. Winfree responded on December 12, 2013, *see*
ECF No. 65-7 at 3, as noted above.

housing health evaluation" noted that an orthopedic consult was pending

for Mr. Hayes.  ECF No. 65-10 at 1 (Deft. Ex. 10).

Ms. Campbell emailed Mr. Winfree again on December 30, 2013,

advising that the second x-ray had been taken as requested and reveals

Mr. Hayes still had a fracture.  ECF No. 65-7 at 4-5 (Deft. Ex. 7).  She

asked whether they were "going to be able to get [Mr. Hayes] to see the

ortho" and indicated there was much concern from Nurse Practitioner

Heuler.  *Id.*  An email response from Mr. Winfree was received that same

day inquiring whether the doctor had "followed the ATP as outlined."  *Id.* at

4.  Mr. Winfree advised that if there were still concerns, the doctor could

call the RMD (Regional Medical Director]."  *Id.*

A notation in the medical records on December 30, 2013, indicates

notes and results were scanned and emailed to Dr. Shubert, the Regional

Medical Director, to review.  ECF No. 65-11 at 1 (Ex. 11); *see also* ECF

No. 63-3 at 4 (Deft. Ex. C).[11]

On January 14, 2014, Ms. Campbell emailed Mr. Winfree again,

advising him that Mr. Hayes already had a second x-ray which still showed

---

[11] There is no evidence as to what happened following that email.  Much of the
information concerning Dr. Shubert's involvement is absent from this record.

the fracture. ECF No. 65-11 at 3 (Deft. Ex. 11). Ms. Campbell said: "I just

need to know what I need to do next with this inmates' consult." *Id.* She

further advised that Nurse Practitioner Heuler had "scanned the new x-ray

results to Shubert for review." *Id.* In response, Mr. Winfree sent an email

on January 16, 2014, stating that the original consult was concluded

because it "was given an ATP (alternative treatment plan)." ECF No. 65-11

at 3. He advised that if new x-rays were "obtained and there is new

information to present, a new consult with rationale needs to be written by

the MD and then submitted to UM." *Id.*

A new consult request was made on January 17, 2014. ECF No. 63-

2 at 4 (Deft. Ex. B). The request was submitted by Nurse Practitioner

Heuler requesting that Mr. Hayes be sent to Dr. Ong "for evaluation &

management." *Id.* Once again, the consult request was marked "urgent,"

and designated as both a "2nd consult" and a "new submit." *Id.*[12]

Mr. Hayes was seen in sick call again on January 17, 2014. ECF No.

65-7 at 18 (Deft. Ex. 7). He needed his passes renewed and it was noted

---

[12] Based on Nurse Practitioner Heuler's "staff request" for a referral to RMC on
October 3, 2013, *see* ECF No. 64 at 23 and ECF No. 63-2 at 2 (Deft. Ex. B), and
another request submitted by Dr. Delacerna on December 12, 2013, *see* ECF No. 63-2
at 3 (Deft. Ex. B), this request is more accurately be described as a fourth request.

that his ace wrap was taken when he went to confinement.  *Id.*  He was also complaining of "a lot of pain."  *Id.*  The nurse noted there was "deformity" and referred the chart to Dr. Delacerna for review of the request for low bunk pass renewal.  *Id.*

An email was sent from Mr. Winfree to Dr. Shubert on the morning of January 20, 2014, concerning the x-ray results and Mr. Hayes' chart.  ECF No. 65-7 at 13 (Deft. Ex. 7).  He noted it was a second request and sought Dr. Shubert's opinion.  *Id.*  By mid-afternoon, Mr. Winfree had sent an email to Dr. Bucarelli, Kohatha Campbell, Nurder Carolyn Lee, and others, directing them to "coordinate the scheduling of" Mr. Hayes' appointment and advising that the new consult request has been "approved."  ECF No. 65-7 at 15 (Deft. Ex. 7).[13]

---

[13] The Court has been unable to locate any documentation in the record which establishes who finally approved the referral to Dr. Ong or when the request form was signed/approval provided.  No approval signature is on the final request form dated January 17, 2014.  ECF No. 63-2 at 4 (Ex. B).  It is troubling that such evidence was not submitted, and curious in light of the email sent from Mr. Winfree to Dr. Shubert on the morning of January 20, 2014, seeking Dr. Shubert's opinion.  Mr. Winfree sent another email that same afternoon advising that the new consult request has been "approved."  However, two days later Dr. Shubert was questioning Mr. Hayes' range of motion and stating he would "like a functional assessment done."  Presumably, Dr. Shubert as the Regional Medical Director made such decisions, yet the manner in which they were communicated leaves much to be desired.  Moreover, the first denial with a direction for ATP is troubling when it involved nothing more than vitamin supplements, delay, and a suggestions of PT which, presumably, stands for physical therapy.  The record contains absolutely no evidence that Mr. Hayes received any therapy.

On January 22, 2014, Dr. Shubert responded to Mr. Winfree's email dated January 20, 2014. ECF No. 65-7 at 27 (Deft. Ex. 7). He questioned what kind of range of motion Mr. Hayes had, considering the fracture involved "the metacarpal/carpal joint." *Id.* Dr. Shubert stated that he would "like a functional assessment done" and said: "Treat the patient not the x-ray." *Id.; see also* ECF No. 63-3 at 4 (Ex. C).[14]

Mr. Hayes was finally taken to the Reception and Medical Center and seen by Dr. Ong on February 19, 2014. ECF No. 63-1 (Ex. A). Prior to examining Mr. Hayes, new x-rays were taken "which showed that the right fifth metacarpal fracture had fully healed, and no surgical intervention was necessary." *Id.* at 3. "The x-ray image also revealed that [Mr. Hayes] had right post-traumatic osteoarthritis of the dip joints of the second and fifth metacarpal phalanges." *Id.* at 3-4. Dr. Ong opined "that Mr. Hayes' osteoarthritis was caused by the initial injury, and was not the result of any failure or delay in medical treatment." *Id.* at 4.

Dr. Ong explained in his affidavit that he is "an independent contractor physician providing plastic, reconstructive and hand surgical

---

[14] Part of that email string reveals a January 17. 2014, notation, apparently from Mr. Winfree which indicates that the "first referral" request "was ATP'd by the RMD." ECF No. 63-3 at 5.

treatment to inmates incarcerated with the Florida Department of Corrections."  ECF No. 63-1 at 1 (Ex. A).  Dr. Ong is "not an employee of the Florida Department of Corrections or Corizon Health."  *Id.*  Dr. Ong held clinics every Wednesday and Thursday at the Reception and Medical Center (a Department of Corrections' facility) in Lake Butler, Florida.  *Id.*  However, Dr. Ong has "no control over the approval or disapproval of consultation requests for [his] services made on behalf of inmates in the Florida Department of Corrections."  *Id.*  Consultation request forms requesting his services were submitted to Corizon Health for review and approval, but "were never submitted" to him.  *Id.* at 1-2.

Dr. Ong states that he "had no knowledge of the right hand injury suffered by Damien C. Hayes until the Florida Department of Corrections transported him to [Dr. Ong's] clinic at the Lake Butler Reception and Medical Center on February 19, 2014."  ECF No. 63-1 at 2.  More specifically, Dr. Ong would not know of an inmate's injury until "the inmate has been brought to [his] clinic by prison staff for [an] initial examination and treatment."  *Id.*  Dr. Ong declares that he was "never provided" the Consultation Request forms dated September 23, 2013, October 3, 2013, or December 12, 2013.  *Id.*  February 19, 2014, was "the first and only

time" he saw Dr. Hayes and was provided a copy of the Consultation

Request form which was dated January 17, 2014.  *Id.*

Dr. Ong further states that he "was never contacted by telephone,

text message, letter or e-mail, by any employee of the Department of

Corrections, or Corizon Health, with respect to the right hand injury

suffered by Damien C. Hayes."  ECF No. 63-1 at 3.  Dr. Ong has "no

control over when the Florida Department of Corrections transports

inmates, including Damien C. Hayes, to [his] clinic at the Lake Butler

Reception and Medical Center."  *Id.*  Furthermore, he "was never provided

copies of any grievances filed by Damien C. Hayes with respect to his right

hand injury" and "was never asked to respond to any grievances filed by

Damien C. Hayes."  *Id.*

Kohatha Campbell also filed an affidavit explaining that she does not

have medical training, but is an administrative assistant.  ECF No. 65-12 at

1 (Deft. Ex. 12).  Her duties include assisting "the nurses and physicians

with the processing of paperwork and making phone calls regarding

consultation requests for inmates."  *Id.*  She sent emails to Mr. Winfree

concerning Mr. Hayes' consultation requests and contends that she "could

not have done more to facilitate" Mr. Hayes' consultation request than she

did.  *Id.* at 2.   She states that she has never provided "care to inmates or made recommendations regarding their care to any other employee of Corizon Health."  *Id.* at 1.

Mr. Winfree provided his own affidavit as well.  ECF No. 65-13 (Deft. Ex. 13).  He explained that his "role was to receive and process consultation orders from correctional institutions across the State of Florida."  *Id.* at 1.  His duties "as a UM nurse" include "organizing medical and clinical information about inmate patients."  *Id.*  He does not administer care to inmates or make recommendations concerning their care.  *Id.*

Mr. Winfree said that he sends information from a correctional institution's medical providers "to the Regional Medical Director regarding Specialty consultation or procedure."  *Id.* at 2.  After the RMD makes a "decision on approval or alternative treatment plan," Mr. Winfree then relays that information back to the institution.  *Id.*

## V.  Analysis

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  The Eighth Amendment guarantees that prisoners will

not be "deprive[d] ... of the minimal civilized measure of life's necessities."

Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d

59 (1981) (quoted in Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir.

2004)). "[B]asic human necessities include food, clothing, shelter,

sanitation, medical care, and personal safety." Harris v. Thigpen, 941 F.2d

1495, 1511 (11th Cir. 1991) (cited in Collins v. Homestead Corr. Inst., 452

F.App'x 848, 850-851 (11th Cir. 2011)).

Deliberate indifference to serious medical needs of prisoners violates

the Eighth Amendment's prohibition against cruel and unusual punishment.

Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). "A

serious medical need is 'one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would

easily recognize the necessity for a doctor's attention." Farrow v. West,

320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted) (quoted in

Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011)). "In either of

these situations, the medical need must be 'one that, if left unattended,

'pos[es] a substantial risk of serious harm.'" Farrow, 320 F.3d at 1243

(citation omitted); see also Mann v. Taser Intern., Inc., 588 F.3d 1291,

1307 (11th Cir. 2009). Alternatively, "a serious medical need is determined

by whether a delay in treating the need worsens the condition" or "if left unattended, poses a substantial risk of serious harm." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (citations omitted).

Deliberate indifference requires more than negligence,[15] but it is unnecessary to show a defendant intended to cause harm. Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994). Deliberate indifference requires a plaintiff to show that a defendant was subjectively reckless and consciously disregarded a substantial risk of serious harm. Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (explained in Farmer, 511 U.S. at 838-40, 114 S. Ct. at 1979-80). "The inadvertent or negligent failure to provide adequate medical care 'cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 105-06, 97 S.Ct. 285 (quoted in Farrow, 320 F.3d at 1243).

In a claim for the denial of medical care, a plaintiff must show: "an objectively serious need, an objectively insufficient response to that need,

---

[15] "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham, 654 F.3d at 1176 (citing Brown v. Johnson, 387 F.3d 1344, 1451 (11th Cir. 2004)).

subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), cert. denied, 531 U.S. 1077 (2001); Farrow, 320 F.3d at 1243. Put another way, to show a defendant acted with deliberate indifference, "a prisoner must show the prison official's: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence.'" Bingham, 654 F.3d at 1176 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).

"However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' " McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted) (quoted in Farrow, 320 F.3d at 1243). For example, medical malpractice does not constitute deliberate indifference. Estelle, 429 U.S. at 106, 97 S. Ct. at 292. A "simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" also does not support an Eighth Amendment claim. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)). Furthermore, a "'complaint that a

physician has been negligent in diagnosing or treating a medical condition

does not state a valid claim of medical mistreatment under the Eighth

Amendment.'" <u>Estelle</u>, 429 U.S. at 106, 97 S.Ct. at 292[16] (quoted in

<u>Bingham</u>, 654 F.3d at 1176).  Put simply, an "official acts with deliberate

indifference when he or she knows that an inmate is in serious need of

medical care, but he fails or refuses to obtain medical treatment for the

inmate." <u>McElligott</u>, 182 F.3d at 1255 (citations omitted).  Moreover,

deliberate indifference to an inmate's serious medical needs may be

attributed to a layman or non-medical provider.  *See* Goebert v. Lee Cty.,

510 F.3d 1312, 1327 (11th Cir. 2007) (noting that "[t]he test for seriousness

includes whether the need 'is so obvious that even a lay person would

easily recognize the necessity for a doctor's attention.'") (citation omitted).

## A.    Dr. Ong's Motion for Summary judgment, ECF No. 64

Dr. Ong argues that the undisputed evidence shows that he was not

deliberately indifferent to Mr. Hayes' medical needs.  ECF No. 63 at 12-15.

In particular, the evidence shows that he did not receive the written

requests for the consults and had no knowledge of Mr. Hayes' medical

---

[16] "The inadvertent or negligent failure to provide adequate medical care 'cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" <u>Estelle</u>, 429 U.S. at 105–06, 97 S.Ct. 285 (quoted in <u>Farrow</u>, 320 F.3d at 1243).

condition until he saw him in February 2014.  The undisputed evidence is

that Dr. Ong had no involvement in either the scheduling of medical

appointments or the transportation of inmates to those appointments.

Because Mr. Hayes has not provided any evidence which demonstrates

that Dr. Ong was responsible for the delay in examining him, summary

judgment should be granted in favor of Dr. Ong.

### B.    Mr. Hayes' summary judgment motion, ECF No. 64

Mr. Hayes filed a "motion for partial summary judgment."  ECF No. 64

at 1.  It is limited only to seeking "entry of a final summary judgment as to

the liability of defendant, Dr. Francis Ong."  *Id.*  In light of the above

recommendation and the lack of any evidence demonstrating Dr. Ong

knew of his medical needs and was deliberately indifferent, Mr. Hayes'

motion for summary judgment should be denied.

### C.    Other Defendants' Summary Judgment Motion, ECF No. 66

Defendants Winfree Bucarelli, Lee, and Campbell contend that

Mr. Hayes cannot establish a deliberate indifference claim against them.

ECF No. 66 at 7.  In support of that argument, Defendants first contend that

Mr. Hayes's fracture "does not meet the objective standard of a serious

medical need . . . ."  *Id.* at 9-10.

Case No. 4:16cv28-MW/CAS

A serious medical need may be shown either by a physician's diagnosis "as mandating treatment" or by one "that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill, 40 F.3d at 1187 (quoted in Farrow, 320 F.3d at 1243).  In this case, medical staff recognized the need for treatment by submitting "urgent" and "emergency medical consultation" requests.  At the first examination of his injury on September 21, 2013, the nurse noted Mr. Hayes had a possible fracture.  Dr. Delacerna saw him on September 25th and ordered x-rays to determine if he had a fracture.  That diagnosis was confirmed on the following day, and an urgent/emergency referral request was submitted by Dr. Bucarelli and Nurse Practitioner Heuler that same day, September 26, 2017.  Those facts demonstrate that Mr. Hayes had a "serious medical need" which was diagnosed by a physician and seeking treatment. Moreover, well established case law requires finding that a broken bone is a "serious medical need" and that delay by even a few hours "for emergency needs such as broken bones and bleeding cuts may constitute deliberate indifference."  Harris v. Coweta Cty., 21 F.3d 388, 393–94 (11th Cir. 1994).  Mr. Hayes had a serious medical need.

Defendants next argue that Mr. Hayes received medical "care on numerous occasions" and the basis for this case is that Mr. Hayes "simply did not receive the care he wanted." ECF No. 66 at 10. That argument should also be rejected. This case does not concern Mr. Hayes' requests to be seen by a specialist rather than prisoner doctors. Instead, it is medical staff at the prison, including at least two physicians and a Nurse Practitioner, who were urgently requesting that Mr. Hayes be seen by RMC by Dr. Ong or in "plastic surgery." ECF No. 63-2 at 1, 3.

More specifically, Dr. Bucarelli notes that she examined Mr. Hayes at the outset of his injury but had no further contact with him. ECF No. 66 at 10-11. The undisputed evidence is that Mr. Hayes did not see Dr. Bucarelli at all. Rather, following the September 26, 2013, x-ray, Dr. Bucarelli, along with Nurse Practitioner Heuler, noted the x-ray results in the Chronological Record of Health Care and submitted a "consultation request/consultant's report" on that same day. Because there was no other involvement by Dr. Bucarelli and she did not provide medical care to Mr. Hayes, there is no evidence that she was deliberately indifferent to his medical needs. Summary judgment should be granted in her favor.

Similarly, the only evidence of involvement by Nurse Carolyn Lee was in responding to an informal grievance filed by Mr. Hayes on October 20, 2013. Nurse Lee responded on October 25, 2013, advised that an "urgent referral" request had been sent. Thus, she reviewed his medical chart, determined that his needs were being addressed, and provided him a response with the information then available to her. There is no other evidence showing her involvement or demonstrating that she was indifferent to his medical needs. Summary judgment should be granted in favor of Nurse Lee as well.[17]

Defendant Kohatha Campbell also asserts that because she "was an administrative assistant only" and lacked knowledge "of the seriousness of" Mr. Hayes' condition, summary judgment should be entered in her favor. ECF No. 66 at 11. She argues there is no evidence that she "ignored" information concerning the need for medical care for Mr. Hayes. *Id.* at 11-12. Mr. Hayes did not come forward with any evidence to demonstrate that Ms. Campbell had any more involvement in his care beyond processing

---

[17] To the degree Mr. Hayes argues that the motion for summary judgment should be denied because neither Dr. Bucarelli nor Nurse Lee submitted an affidavit, *see* ECF No. 73, that argument must be rejected. Celotex Corp., 477 U.S. at 324, 106 S. Ct. at 2553 (explaining that "a motion for summary judgment may be made pursuant to Rule 56 'with or without supporting affidavits.'").

paperwork and making phone calls, or sending emails, concerning consultation requests. She made numerous requests to Mr. Winfree seeking information on requests which were pending for a considerable length of time. Yet there is no evidence that she had the ability to speed up the approval process, or should have done more to more expeditiously receive a response to the requests submitted. Indeed, multiple requests were submitted on behalf of Mr. Hayes by his medical providers at Taylor C.I., and denied by the Regional Medical Director. There was certainly delay both in making that decision and in receiving that information. However, no evidence has been submitted which provides a causal connection to Ms. Campbell. No evidence was submitted by Mr. Hayes which supports finding she did not properly coordinate the consultant requests or that she acted with deliberate indifference. Summary judgment should be granted in her favor as well.

Finally, Mr. Winfree points out that he also performed administrative duties and did not provide healthcare to Mr. Hayes, or any inmate. ECF No. 66 at 12. While that may be true, that does not insulate Mr. Winfree from liability if he acted intentionally to delay providing Mr. Hayes "with access to medical treatment, knowing that the inmate has . . . an urgent

medical condition that would be exacerbated by delay." Lancaster v. Monroe County, Alabama, 116 F.3d 1419, 1425 (11th Cir. 1997) (quoted in Goebert, 510 F.3d at 1330. Moreover, Mr. Winfree occupies the position of Utilization Management Nurse, a position which undoubtedly requires some medical training or knowledge.

Mr. Winfree states that the evidence submitted in this case paints "a picture of what it is like to provide healthcare to an inmate within the Florida Department of Corrections." ECF No. 66 at 12. In doing so, the fact that it took four months for Mr. Hayes to have approval to see Dr. Ong has been substantially minimized. *Id.* The picture is not pretty.

That Mr. Hayes was fortunate enough not to have required surgery, as concluded by Dr. Ong, is no reason to applaud the events which took place in this case. Immediately after discovering that Mr. Hayes' finger was fractured, a request was submitted by officials at the institution on September 26, 2013. The request was designated by Nurse Practitioner Heuler and Dr. Bucarelli as an "emergency" and "urgent" for a condition noted to be "acute trauma." There is no evidence that the request was treated as designated, or even treated at all. That is also problematic in

another respect: there is no evidence as to who received that request form, or that it was, indeed, received.

Nevertheless, when no response was received, a second "staff request/referral" was submitted by Nurse Practitioner Heuler on October 3, 2013. Again, the request was noted to be "urgent/emergent" and, once again, there is no evidence of any action taking place concerning the request. Mr. Hayes went to sick call and filed an informal grievance in October, but there is no evidence that any additional efforts were made on his behalf to obtain the requested consult until November 2013. On November 5, 2013, Ms. Campbell sent an email to Mr. Winfree. It was again designated as "an Urgent/Emergency Consult," and went without a meaningful reply.[18] It was not until Ms. Campbell sent another email on December 10, 2013, that Mr. Winfree replied and advised that "an ATP" was entered. Additional follow-up emails took place in mid-January 2014, but that was well after a December 5, 2013, second x-ray. Soon thereafter, Mr. Hayes was approved for a consult which was scheduled for mid-February 2014. The length of that delay is concerning, and the reason for

---

[18] The evidence shows that in response to Ms. Campbell's November 5, 2013, email, Mr. Winfree replied on November 21, 2013: "f/u." ECF No. 65-7 at 1. Presumably, that stands for "follow up," but it was not responsive.

the delay is unknown.  Speculation, however, does not provide a basis for liability.

Ultimately, the undisputed evidence in this case is that Mr. Hayes had a painful fracture and experienced delay in receiving medical care.  He did, however, receive pain medication and a splint.  Without guidance from a specialist, little more would be provided for such an injury.  While "deliberate indifference could be inferred from an unexplained delay in treating a known or obvious serious medical condition," Harris, 21 F.3d at 394 (citing Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990), it remains that there is no evidence that any named Defendant acted intentionally or "with an  attitude of 'deliberate indifference,'" Taylor, 221 F.3d at 1258, to cause that delay.  At the summary judgment stage, reasonable inferences are resolved in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." Scott, 550 U.S. at 380.  Here, Mr. Hayes has not demonstrated such a dispute concerning Nurse Winfree because he has not provided evidence that the delay in responding to Ms. Campbell's emails and forwarding referral requests was "not merely accidental inadequacy" or negligence. 221 F.3d at 1258.

Case No. 4:16cv28-MW/CAS

Well established law provides that "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe Cnty., 116 F.3d 1419, 1425 (11th Cir. 1997); *see also* Farrow, 320 F.3d at 1246 (noting that "a defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference."). Here, the evidence sufficiently shows that responses were not provided as they should have been, but it is insufficient to show that Mr. Winfree was deliberately indifferent to Mr. Hayes' medical needs. Accordingly, summary judgment should be granted in his favor.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that the motion for summary judgment filed by Defendant Ong, ECF No. 63, be **GRANTED**, that the summary judgment motion filed by Plaintiff, ECF No. 64, be **DENIED**, the summary judgment motion filed by Defendants Bucarelli, Lee, Campbell, and Winree, ECF No. 66, be **GRANTED**, and Plaintiff's claim against

Dr. Delacerna be dismissed pursuant to Federal Rule of Civil Procedure

12(b)(5) for failure to serve that Defendant with process.

      **IN CHAMBERS** at Tallahassee, Florida, on August 25, 2017.


              S/     Charles A. Stampelos           
              **CHARLES A. STAMPELOS**
              **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

      **Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. _See_ 11th Cir. Rule 3-1; 28 U.S.C. § 636.**